# Exhibit 3

# THE LAW OFFICE OF SHAWN SHEARER, P.C.

3839 McKINNEY AVENUE, SUITE 155-254
DALLAS, TEXAS 75204
OFFICE: (972) 803-4499
shawn@shearerlaw.pro

October 11, 2019

**VIA FEDERAL EXPRESS**

Mr. Joseph J. Plumeri II                    Kohlberg, Kravis and Roberts
150 Bradley Place                            9 West 57th Street Suite #4200
Palm Beach, Florida 33480                    New York, New York 10019

Mr. Plumeri:

I represent Steven B. Barger.

**Demand is hereby made for the payment of $6.5 million to Mr. Steven Barger to settle all of Mr. Barger's claims against you, personally, arising out of, or related to, your misappropriation and use of Mr. Barger's intellectual and proprietary property.**

In exchange for your payment, Mr. Barger will release all claims against you arising out of the infringement and misappropriation of his property, and provide you a fully-paid, non-exclusive, license to his intellectual property in your possession created prior to the date of a signed agreement containing finally agreed terms.

During the course of litigation in *Barger v. First Data, et al (1:17-cv-04869)* you provided sworn statements that led to Mr. Barger's discovery that you have stolen and unjustly profited from unauthorized use of Barger's solely owned intellectual property.

Mr. Barger was earning roughly $2 million dollars a year in 1999 when you and Mr. Sanford I. Weill employed him CITI. Barger himself said you offered him at least that much in total compensation to come to Willis - an offer that Barger turned down, and in doing so, declined to allow you any use of Barger's intellectual property during your tenure there.

Mr. Louis DiLorenzo, Fiserv's defense counsel - freshly minted with an appearance exactly 61days prior to trial - was well aware that you had requested that Barger accompany you to Willis in 2000. This fact is not in dispute, and has been testified to on the record in *Barger v. First Data, et al.* DiLorenzo made it clear that Barger had spurned your request for Barger's continued input. DiLorenzo's entire closing statement consisted of referring to you as "The Godfather" in front of Barger's jury, followed by counsel's mocking cancer survivor Barger and his work performance, all the while bragging that you had been successful for thirteen years without Barger's work or assistance.

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Joseph J. Plumeri II
October 11, 2019                                                                                             Page 2

DiLorenzo got it half right. You *had* been successful over the thirteen years you were at Willis. Your success is not relevant for Barger's FMLA/ADA claim that is currently awaiting appeal in the Second Circuit. However, Mr. DiLorenzo's portrayal of your success on the record in *Barger v. First Data, et al* is *highly* relevant to Mr. Barger's now impending claims against you, personally. Claims that arise due to the fact that you had, unbeknownst to my client until September 2019, both used and relied on Barger's work while you were at Willis Tower Watson.

Barger has only now discovered that over a 13 year period, (at the minimum) you misappropriated and financially benefited from intellectual property and proprietary rights, including without limitation: copyrighted materials, trademarks, trade names, slogans, trade secrets and confidential information (including know-how, techniques, and business processes, preparation, educational, training, writing, presentation, solicitation, motivation, etc.) formulas, compositions, production processes and techniques, designs, concepts, drawings, presentation designs and slides, compilations of materials, customer and supplier lists, business plans, marketing plans, presentation materials, solicitation materials, training and teaching materials, etc. - all of which belong to Mr. Steven Barger and are wholly owned by him.

Barger also learned during his September 2019 trial of the existence of claims against you including: fraud in the inducement, detrimental reliance, unjust enrichment, conversion and theft.

It appears that your run at Willis was successful. $500,000 a year for use of my client's intellectual property when you had been paying Barger four times that amount the year prior for use of his intellectual property and his fully available time and attention, given your acquired wealth during that timeframe, seems light.

A settlement will avoid the specter of a public recounting of your knowingly fraudulent contract negotiations with Barger in 2013, Barger's detrimental reliance on your stated authority, as well as the spectacle of Barger hauling out his published proprietary works dating back to 1978. Not to mention the rehash of a nearly forty year personal and professional relationship. I am not entirely certain what was in your professional bag of tricks before you met my client, but I do know what was in his.

My client does not wish to suggest, nor will he plead, that you are solely reliant on Barger or his ideas for your income or level of success. That is an absurd notion and is not a necessary element of my client's claim. Rather, as is the case in matters of copyright infringement, as well as intellectual property disputes, minus a **clear** understanding between the parties as to the scope and duration of the use of said property, it becomes virtually impossible to determine exactly how much of the "success" (e.g. money) of the party who converted the damaged party's property, is a result of that conversion.

Unraveling Barger's concepts, which began to be published in 1978, from concepts you presented as being yours and converted illegally without Barger's authorization is not going to be

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

Joseph J. Plumeri II
October 11, 2019                                                                     Page 3

easy, but any copyright or intellectual property lawyer will tell you it can be done, and my client fully intends to do it, if necessary.

Your need to negotiate a contract with my client, as **admitted** during commencement of *Barger v. First Data, et al,* combined with First Data/Fiserv's counsel's obsession with contracts, agreements and payments to my client, and said counsel's on the record representations that such contracts and agreements are not only mandatory, but actually constitute the entire basis for determining validity of performance and compensation at First Data/Fiserv, are all tangible demonstrations of proof that you were at all times relevant, aware that you **do not** own, and **have no** ability to use, Mr. Barger's intellectual property without Barger's expressed consent.

Had you believed at any time that you "owned" Barger's property, or that he was not due compensation for his intellectual property, there would have been no need for those contract negotiations, the conditions of which comprised such a substantial portion of Mr. Eidelman's discovery time and Mr. DiLorenzo's closing argument.

The transcript of *Barger v. Data,et al*, the evidence presented, your testimony, and the testimony of others, has already proven your unauthorized use of Barger's intellectual property. There really is no need to litigate. It was all already said and entered into evidence - mainly by defendants along with Eidelman and DiLorenzo, on the record in a federal trial.

To be clear - the proof my client needs to prove both liability and damages in his litigation against you, exists in the sworn testimony of a transcript in a federal trial. Evidence doesn't usually get much better than that.

Your contract negotiation with my client, and the resulting agreements, were the subject of a six month discovery extension obtained by Mr. Gary Eidelman for the expressed purpose of further inspecting contracts and agreements that had been represented to Barger by you, as having been fully negotiated and agreed to by First Data/Fiserv at the highest levels beginning in 2013.

Eidelman, as is his habit, conflated the idea of outside counsel learning about the existence of evidence from its client, with the client itself knowing of the existence of that same evidence. Due to Eidelman's inability to understand this fundamental element of evidentiary procedure (combined with his stated desire to Barger's counsel to "run this case" until Eidelman could afford to pay for his daughter's impending wedding at the Four Seasons) Eidelman attempted to stave off the damage claim he knows is coming eventually in Barger's FMLA case by suggesting that a $50,000 invoice, authorized and paid in 2014, was "after acquired evidence."

Since Eidelman currently does not have use of a time machine, his "discovery" fell flat due to the unavoidable reality that payment of the invoice in question by the defendant in 2014 served as proof that the invoice could never be "after acquired" by that same defendant in 2018. Eidelman's seeming inability to comprehend the space - time continuum has now led my client to his discovery that you are the party who had negotiated with Barger in bad faith in 2013 and

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**

again in 2014, after having stolen from him, without his knowledge, for the preceding thirteen years.

Eidelman has tripped over the proverbial dollar to pick up a penny.  In your case, it seems he tripped over several million dollars of personal liability, the existence of which Eidelman has now alerted my client. It would appear that Eidelman has ostensibly inadvertently done my client a "mitzvah" on his way to his daughter's Fiserv-sponsored nuptials.

To be clear, Mr. Barger does not have any current arrangement or agreement with you regarding Barger's intellectual property. You do not have his permission to use any of his intellectual property, and if you are doing so, you must cease and desist immediately. Mr. Barger only discovered your unauthorized conversion of and profits from his property within the past thirty days.

If this matter is litigated, the content and origin of writing of your 2015 book "The Power of Being Yourself" will have to be called into question, as well as any current work and speaking fees you receive that rely in any way on Barger's intellectual property. This is not a chore which Mr. Barger in any way relishes. Rather, my client is disappointed and saddened in his knowledge of your theft of his property, and prefers to settle at his stated number as opposed to a rehash of every detail that has transpired between the two of you since 1982.

Nonetheless, Mr. Barger is willing to litigate, as he has demonstrated to First Data/Fiserv, should the need arise.

 **Mr. Barger's demand is for payment of $6.5 million for Mr. Barger's release of all claims against you, personally, arising out of, or related to, your misappropriation and use of Mr. Barger's intellectual and proprietary property and his granting of a fully-paid, non-exclusive, license to continue to using his now existing intellectual and proprietary property in your possession.**

Very truly yours,

**THE LAW OFFICE OF SHAWN SHEARER, P.C.**